[No. B075888. Second Dist., Div. Six. Sept. 28, 1994.]

HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff and Respondent, v.
LISA CANCILLA et al., Defendants and Appellants.

COUNSEL

James R. Murphy, Jr., and Stephen D. Hamilton for Defendants and Appellants.

Borton, Petrini & Conron and Philip F. Sinco for Plaintiff and Respondent.

OPINION

**GILBERT, J.**—A driver has an accident with another vehicle driven by an uninsured motorist. The driver has uninsured motorist coverage for the vehicle he is driving. He also has uninsured motorist coverage with a different insurance company for another vehicle he owns.

Here we hold that under Insurance Code section 11580.2, the driver may not claim uninsured motorist coverage under the policy for the vehicle not involved in the accident.

Lisa Cancilla, individually and on behalf of her daughter, Brittany Cancilla (Cancilla), appeals from the summary judgment entered in favor of respondent, the Hartford Casualty Insurance Company (Hartford). The trial court ruled that Cancilla may not obtain coverage under the uninsured motorist coverage of a policy for a vehicle owned by Cancilla's husband, decedent Richard Cancilla, which was not involved in the instant accident. We affirm.

### FACTS

While riding his motorcycle, Richard Anthony Cancilla was struck and killed by a vehicle driven by an uninsured motorist. Cancilla's motorcycle was insured by the Allstate Insurance Company for uninsured motorist coverage of $15,000 per person and $30,000 per accident. Allstate paid its policy limit to Cancilla.

Cancilla also maintained uninsured motorist coverage for a 1987 Chevrolet van through Hartford. The Hartford policy provided uninsured motorist coverage for the van in the amount of $1 million. Cancilla demanded that Hartford pay the difference between the amount paid by Allstate and the $1 million dollar limit provided in the Hartford policy.

Hartford refused to do so and filed the instant declaratory relief action to determine its rights and obligations in this case. In its summary judgment motion, Hartford successfully contended that its policy on the van did not afford uninsured motorist coverage for the motorcycle Richard Cancilla was riding when the accident occurred, and that the policy contained an applicable exclusion to such coverage. The motorcycle was not a described vehicle in the Hartford policy; only the van was covered.

The trial court ruled that the exclusion in the Hartford policy applied to this case and that Insurance Code section 11580.2, subdivision (c)(6) did not preclude the exclusion. Accordingly, the trial court entered judgment in Hartford's favor and this appeal ensued.

## DISCUSSION

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citation.]' " (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

The facts are undisputed. Cancilla concedes that the instant Hartford insurance policy does not afford coverage in this case. The Hartford policy states, in pertinent part, that ". . . COVERAGES WILL APPLY ONLY TO THOSE 'AUTOS' SHOWN AS COVERED 'AUTOS.' " The declarations show the only "autos" that are covered are those defined as "SPECIFICALLY DESCRIBED 'AUTOS' " which are scheduled. The only vehicle scheduled is the 1987 Chevrolet Step Van. Thus, the only "auto" covered by the policy is the 1987 Chevrolet van specified therein.

The uninsured motorists coverage of the Hartford policy states, in pertinent part, "C. This insurance does not apply to any of the following: . . . 4. 'Bodily injury' sustained by you . . . 'occupying' . . . any vehicle owned by you . . . that is not a covered 'auto.' " The Hartford policy thus excludes coverage for accidents occurring while Cancilla rode his motorcycle.

Insurance Code section 11580.2 requires automobile insurance companies to provide coverage for their insureds for injury caused by an uninsured motorist.[1]

Insurance Code section 11580.2, subdivision (b) provides definitions for various terms used in section 11580.2. It states, in pertinent part, "As used in this subdivision *'insured motor vehicle' means the motor vehicle described in the underlying insurance policy . . . .*" (Italics added.)

Insurance Code section 11580.2, subdivision (c) states, in pertinent part that, "[t]he insurance coverage provided for in this section does not apply . . . [¶] (2) To bodily injury of the insured while in or upon . . . a motor vehicle other than *the described motor vehicle* if the owner thereof has insurance similar to that provided in this section." (Italics added.) Subdivision (c)(6) also permits insurance companies to exclude coverage for ". . . bodily injury of the insured while occupying a motor vehicle owned by an insured . . . unless the occupied vehicle is *an insured motor vehicle.*" (Italics added.)

Cancilla contends that Insurance Code section 11580.2 precludes Hartford from relying upon the exclusion in subdivision (c)(6). Cancilla interprets the language in subdivision (c)(6) to allow an insured to obtain policy limits from an insurance company for a vehicle that is not covered by the policy.

To better understand Cancilla's interpretation, assume that a driver with uninsured motorist coverage is involved in an accident with an uninsured motorist. The driver obtains the policy limits from the insurance company covering the vehicle he or she was driving when involved in the accident. Cancilla argues that if that driver also has uninsured motorist coverage for a vehicle other than the one involved in the accident with a different insurance company, that other company must also honor a claim for uninsured motorist coverage.

Cancilla contends that because Insurance Code section 11580.2, subdivision (c)(6) does not contain the phrase "*described* motor vehicle," used in

---

[1]At the time of the accident, Insurance Code section 11580.2 provided in pertinent part as follows: "(a) (1) No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, . . . shall be issued or delivered in this state . . . unless the policy contains, or has added to it by endorsement, a provision . . . insuring the insured, the insured's heirs or legal representative for all sums within the limits which he, she or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. . . ."

subdivision (c)(2), but only the phrase "an *insured* motor vehicle," she may seek additional coverage from Hartford. This is because decedent was driving an insured vehicle, even though that vehicle was not covered under the Hartford policy. Her contention runs counter to the purpose of the statute when it is read as a whole.

In construing statutory provisions, we " '. . . ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In interpreting particular words, phrases, or clauses in a statute, 'the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision . . . .' " (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].) "The literal meaning of the words of a statute may be disregarded to avoid absurd results" or if such a reading would frustrate the " 'manifest purposes' of the legislation as a whole. [Citations.]" (*People* v. *Boyd* (1979) 24 Cal.3d 285, 294 [155 Cal.Rptr. 367, 594 P.2d 484]; accord, *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

" 'Wherever possible, potentially conflicting provisions [within the statute] should be reconciled in order to carry out the overriding legislative purpose as gleaned from a reading of the entire act. [Citation.] A construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless. [Citations.]' " (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal.Rptr.2d 813, 842 P.2d 112].)

■ " '[T]he provisions of the statute [Ins. Code, § 11580.2] are a part of every policy of insurance to which it is applicable.' [Citation.]" (*Hartford Fire Ins. Co.* v. *Macri, supra,* 4 Cal.4th 318, 324.) If the ". . . insurance policy conflicts with section 11580.2, the statute prevails. [Citation.]" (*Macri, supra,* at p. 325, fn. 1.) "California courts are required to construe the uninsured motorist statute (Ins. Code, § 11580.2) in favor of coverage wherever possible. Any doubtful language in the statute should be resolved in favor of the insured. However, the principle of liberal interpretation should not be applied to give a forced construction or one which inserts a requirement not contained in the statute where the statute is clear in the context of the factual situation. [Citations.]" (*Craft* v. *State Farm Mut. Auto. Ins. Co.* (1993) 14 Cal.App.4th, 1284, 1291-1292 [18 Cal.Rptr.2d 293].)

■ Our Supreme Court explained that "[t]he purpose of the [uninsured motorist] statute is 'to protect one lawfully using the highway *by assuring*

*him of payment of a minimum amount* of an award to him for bodily injury caused by the actionable fault of another driver.' [Citation.]" (*Hartford Fire Ins. Co.* v. *Macri, supra,* 4 Cal.4th at p. 324, italics added.) Thus, " '. . . the purpose of the uninsured motorist statute is *not to make all drivers whole* from accidents with uninsured drivers, *but to make sure that drivers injured* by such drivers *are protected to the extent that they would have been protected had the driver at fault carried the statutory minimum of liability insurance.'* [Citation.] *The law is not designed to provide the insured with greater insurance protection than would be available under a policy containing minimum statutory limits.* [Citation.] These limits are not and never have been adequate to make insured parties whole." (*Austin* v. *Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1817 [21 Cal.Rptr.2d 56], italics added.) Although *Austin* concerned the issue of whether one insured by an underinsured driver is entitled to costs in an arbitration proceeding under the statute, the general principle stated applies to the entire statute.

Cancilla asserts that because the addition of Insurance Code section 11580.2, subdivision (c)(6) in 1968 was intended to preclude only uninsured individuals from making claims under policies issued to other household members, Hartford may not refuse this claim.

Insurance Code section 11580.2, subdivision (c)(6) was added in 1968, in response to *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210 [58 Cal.Rptr. 243]. In *Lopez,* a father successfully sought coverage under his daughter's uninsured motorist provision for her vehicle after he was struck by an uninsured motorist while he was walking. The father had failed to insure his own vehicle. Before *Lopez,* section 11580.2 expressly required insurance policies to provide uninsured motorist coverage to relatives of an insured who live in the same household, even if they failed to insure their own vehicles.

Because of this express statutory requirement, the Court of Appeal had to affirm the trial court's judgment to permit coverage under the daughter's insurance. The Court of Appeal noted that ". . . [d]efendant's argument that it [Ins. Code, § 11580.2] should exclude one *who doesn't insure his own car* would better be addressed to the Legislature." (*Lopez* v. *State Farm Fire & Cas. Co., supra,* 250 Cal.App.2d at p. 212, italics added.) In the next Legislative session, subdivision (c)(6) was added to rectify this anomalous situation.

Cancilla's position strains credulity when one considers the specific problem Insurance Code section 11580.2, subdivision (c)(6) was meant to resolve, the purpose of the statute and the language of the statute read as a

whole. Cancilla argues that section 11580.2 simply insures people, not vehicles. She is only half right. The section allows only certain people to claim uninsured motorist coverage—those whose uninsured motorist insurance covers the vehicle they are driving at the time of an accident with an uninsured motorist.

Although Insurance Code section 11580.2 is not a model of legislative clarity, it cannot reasonably be read to provide the coverage Cancilla seeks. It contains no express or implied provision making insurance companies liable for additional coverage under the facts of the instant case. Section 11580.2 requires insurance companies to provide *minimum financial responsibility coverage* for bodily injury liability arising out of the ownership or use of a described motor vehicle when an accident occurs with an uninsured or underinsured vehicle. (See subds. (a) & (m) so specifying.) If this were not so, motorists, for example, who own several vehicles, would insure only one vehicle with maximum coverage and the others with minimum coverage. Regardless of which vehicle they were driving at the time of an accident with an uninsured motorist, they would always claim coverage under the policy with maximum coverage regardless of exclusions.

Amendments to Insurance Code section 11580.2, subdivision (b) do not alter the meaning of the statute as a whole. The case of *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657 [128 Cal.Rptr. 514] is instructive. In *Harrison*, an injured plaintiff appealed from the denial of his petition to compel arbitration against two insurance companies. He was injured in a collision with an uninsured motorist while he was riding his motorcycle. The policy on his motorcycle excluded uninsured motorist coverage. Plaintiff sought to obtain coverage through a policy with uninsured motorist coverage on another vehicle he owned which was not involved in the accident.

As here, the policy on the other vehicle excluded coverage for injuries incurred while occupying a motor vehicle not insured under that policy. The *Harrison* court stated, "[t]his exclusion conforms to the provisions of subdivision (c) of section 11580.2 providing for 'Exemptions.'" (*Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 56 Cal.App.3d at p. 662.) "The term 'insured motor vehicle' is defined in subdivision (b) of section 11580.2 as '. . . the motor vehicle described in the underlying insurance policy of which the uninsured motorist endorsement or coverage is a part . . . .'" (*Harrison, supra,* at pp. 662-663.) "Accordingly, [the other policy] both by its terms and consistent with the exemption authorized by section 11580.2, precluded liability to plaintiff when he sustained injuries

while occupying a motorcycle owned by him which was not an 'insured motor vehicle.' " (*Harrison, supra,* at p. 663.)

Although the policy for Cancilla's van contains uninsured motorist vehicle coverage, as required under Insurance Code section 11580.2, it is not the described motor vehicle in this case within the meaning of section 11580.2 because it is not the vehicle described in the policy pertaining to the vehicle involved in the accident.

Although subdivision (b) of Insurance Code section 11580.2 was amended in 1989 to state, "*As used in this subdivision* 'insured motor vehicle' means . . . ," this did not alter the meaning of the other provisions of the statute. Subdivision (b) is a compendium of definitions of terms used in the statute and no substantive change was intended by the amendment. The Assembly Committee on Judiciary stated in the Legislative Counsel's Digest that, "This bill would *restate existing provisions of law* to effectuate the recommendations made by the Legislative Council to the Legislature for consideration during 1989 *and would not make any substantive change in the law.*" (4 Stats. 1989 (Rep. Sess.) Summary Dig., p. 568, italics added.) This 1989 amendment constituted routine code maintenance. Thus, the holding of *Harrison* applies to this case.

Because Insurance Code section 11580.2, subdivision (b) defines an "insured motor vehicle" to mean ". . . the motor vehicle described in the underlying insurance policy . . . ," and because the amendment to subdivision (b) enacted in 1989 effects no substantive change, we harmonize the subdivisions of 11580.2 in light of *Macri, Harrison* and *Silver* to mean that one may make a claim for uninsured motorist compensation only on the motor vehicle described in the policy for which the claim is made.

█ Insurance Code section 11580.2, subdivision (c)(6) was added to rectify a specific problem—attempts by those who do not maintain insurance to use another's coverage to make a claim. It was intended to make sure people carry their own insurance for their own claims. (*People* v. *Mobil Oil Corp.* (1983) 143 Cal.App.3d 261, 270 [192 Cal.Rptr. 155]; *People* v. *Wood* (1958) 161 Cal.App.2d 24 [325 P.2d 1014] [courts consider statutory amendments in light of the decisional background under which they are adopted].) *Harrison* was decided in 1976, long after *Lopez* and the addition of subdivision (c)(6).

██ Taking into account its subdivisions and its purpose, we arrive at the only one reasonable interpretation of the statute in this instance. One

may make a claim for uninsured motorist coverage only for the vehicle involved in a given accident as described in the policy for which the claim is made. Cancilla is not entitled to claim coverage under another policy from a separate company for a vehicle not involved in this accident. Cancilla obtained the policy limits under the applicable policy. That is all Cancilla is entitled to receive under Insurance Code section 11580.2. (*Hartford Fire Ins. Co.* v. *Macri, supra,* 4 Cal.4th at p. 324.) Here we do not consider those situations involving claims by pedestrians for uninsured motorist coverage.

The judgment is affirmed. Costs are awarded to Hartford.

Stone (S. J.), P. J., and Yegan, J., concurred.