TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| : | | |
| OPINION | : | No. 19-1001 |
| : | | |
| of | : | April 1, 2022 |
| : | | |
| ROB BONTA | : | |
| Attorney General | : | |
| : | | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

THE HONORABLE GALENA WEST, EXECUTIVE DIRECTOR OF THE FAIR POLITICAL PRACTICES COMMISSION, has requested an opinion relating to campaign contributions by Commissioners.

**QUESTION PRESENTED AND CONCLUSION**

Does Government Code section 83105, which bans campaign contributions by members of the Fair Political Practices Commission, apply to election campaigns for President and Congress?

Yes, the statutory ban applies to elections held in California, which includes elections for President and for seats in the United States Senate and House of Representatives.

1

## BACKGROUND

The Fair Political Practices Commission administers and implements the Political Reform Act of 1974, which contains Government Code section 83105.[1]  The Act, adopted as a voter initiative measure in the wake of the Watergate scandal, seeks to prevent political corruption by regulating lobbying, conflicts of interest, and campaign disclosures, among other things.[2]  These concepts were not new in 1974, but voters determined that state and local authorities had inadequately enforced prior laws.[3]  So the voters established an independent government body to oversee implementation and enforcement of the Act:  the Fair Political Practices Commission.

The Commission comprises five appointees; the method of their appointment is designed to limit partisan influence by spreading appointments across political parties.[4]  Voters entrusted the Commission with "primary responsibility for the impartial, effective administration and implementation" of the Act, to ensure that the Act would be "vigorously enforced."[5]

To that end, the Commission has extensive oversight powers.  For example, the Commission may investigate possible violations, hold hearings, order penalties, and compel disclosures.[6]  The Commission may also make rules and regulations, prescribe

---

[1] Gov. Code, § 81000 et seq.  All statutory references in the text are to the Government Code unless otherwise noted.

[2] *Ibid*.; see generally *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 244; *People v. Snyder* (2000) 22 Cal.4th 304, 307.

[3] Gov. Code, § 81001, subd. (h); see *Warden v. Brown* (1960) 185 Cal.App.2d 626, 627–628 (discussing long history of "election purity laws" requiring disclosures of contributions).

[4] See Gov. Code, §§ 83100, 83101, 83102.  For example, no more than three of the five Commissioners may be of the same political party.  (Gov. Code, § 83100.)  The Governor appoints the Chair and one Commissioner, who may not be of same party.  (Gov. Code, § 83101.)  The Attorney General, the Secretary of State, and the Controller each appoints a Commissioner; if these appointing officers are of the same party, then the Controller appoints from a list (if provided) by other parties.  (Gov. Code, § 83102.)

[5] Gov. Code, §§ 81002, subd. (f), 83111; see Gov. Code, §§ 82012, 91001, subd. (b).

[6] Gov. Code, §§ 83115, 83116, 90009, subd. (a).

forms and publish manuals to facilitate compliance and enforcement, and issue opinions on which a requesting party may rely as a safe harbor.[7]

The provision we consider here, Government Code section 83105, fosters impartiality by prohibiting Commissioners from engaging in certain political activities during their tenure.  Commissioners may not serve as an officer of a political party or partisan organization, work as a lobbyist, or hold or seek another public office.[8]  Nor may Commissioners "participate in or contribute to an election campaign."[9]  This brings us to the issue at hand:  whether this statutory ban on contributing to an election campaign applies to one for President or Congress.[10]

The Commission's own manual provides that it does.[11]  But at its September 2019 meeting, the Commission decided to suspend its own rule against donations to federal candidates, reevaluate related manual provisions governing Commissioner conduct, and seek this Attorney General opinion.[12]  At its December 2019 meeting, the Commission

---

[7] Gov. Code, §§ 83112, 83113, 83114.

[8] Gov. Code, § 83105.  The latter prohibition also applies during their term of appointment.  (*Ibid*.)

[9] Gov. Code, § 83105.

[10] We have been asked only to interpret the statute, not to resolve any potential free-speech issue that might arise under the state or federal Constitution.

[11] Fair Political Practices Commission, Commissioner Code of Conduct (Oct. 2020), pp. 3–4 (hereafter "Manual").  Prior editions provided the same.  (See, e.g., Fair Political Practices Commission, 2019 Commissioner Manual (June 2019), pp. 14–15.)

[12] See, e.g., Fair Political Practices Commission Minutes of Hearing, Sept. 19, 2019, p. 3, available at https://fppc.ca.gov/content/dam/fppc/NS-Documents/AgendaDocuments/Minutes/2019/Approved/sept%202019.pdf  (as of Mar. 7, 2022); Commissioner Cárdenas, mem. on Commissioner Manual Revision, Dec. 19, 2019, pp. 1–2, on file; McGreevy, L.A. Times, *California Campaign Watchdog Suspends Donation Rules after a Member Gives to Sanders*, Dec. 4, 2019, available at https://www.latimes.com/california/story/2019-12-04/california-campaign-watchdogs-want-to-make-their-own-political-donations (as of Mar. 7, 2022).

19-1001

decided to return to its rule embodied in its manual.[13]  The Commission's request for an Attorney General opinion on this topic remains open.

## ANALYSIS

To interpret the scope of the statutory ban on FPPC Commissioner contributions to election campaigns, we look to the usual principles governing questions of statutory interpretation, which apply equally to a voter-enacted initiative such as the Act.[14]  As we explain below, the language, history, and purpose of Government Code section 83105 all compel the conclusion that the ban extends to all federal elections held in California.

**Statutory Language**

Government Code section 83105 provides in relevant part:

> A member of the commission, during the member's tenure, shall not hold any other public office, serve as an officer of any political party or partisan organization, participate in or *contribute to an election campaign*, or employ or be employed as a lobbyist nor, during the member's term of appointment, seek election to any other public office.[15]

Does this reference to "an election campaign" include one for President or Congress?  Based on the definition of "election" provided in the Act, we believe it does. While silent on the meaning of "campaign" and "election campaign," Government Code section 82022 defines "election" to mean "*any* primary, general, special or recall election held in this state."[16]  A "general election" held in California includes federal elections for President, Vice President, and seats in the United States Senate and House of

---

[13] Fair Political Practices Commission Minutes of Hearing, Dec. 19, 2019, p. 3, available at https://fppc.ca.gov/content/dam/fppc/NS-Documents/AgendaDocuments/Minutes/2019/Approved/dec%202019.pdf (as of Mar. 7, 2022); McGreevy, L.A. Times, *California's Campaign Watchdog Reverses Course, Won't Allow Its Leaders To Donate to Politicians*, Dec. 19, 2019, available at https://www.latimes.com/california/story/2019-12-19/california-fair-political-practices-commission-political-donations (as of Mar. 7, 2022).

[14] *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.

[15] Gov. Code, § 83105, italics added; see Gov. Code, § 82012 ("Commission" is Fair Political Practices Commission).

[16] Gov. Code, § 82022, italics added.

Representatives.[17]  Those federal elections therefore fall squarely within the Act's definition of an "election."

The Act states that its definitions govern the interpretation of the Act, "[u]nless the contrary is stated or clearly appears from the context."[18]  And nothing in the Act suggests an intent to alter the definition of "election" for section 83105.  In contrast, other parts of the Act do provide customized definitions limited to particular sections.  For example, one section of the Act limits gifts to Commissioners, and defines "gift" uniquely for purposes of that section, ousting the definition that would otherwise apply.[19]

The Act's drafters demonstrated that they knew how to exclude federal elections when that was their intent.  For instance, the Act separately defines "statewide election" to exclude elections for federal office.[20]  It also defines "candidate," "elective office," "elective state office," "state candidate," and "statewide elective office" in terms that exclude federal offices or federal candidates.[21]  But the Act does not use any of these other terms in section 83105.  Instead, it uses the term "election," which is defined to encompass federal elections held in this State.

---

[17] See U.S. Const., art. I, § 4, cl. 1 (state legislatures to provide times, places, and manner of congressional elections); Elec. Code, §§ 324, subd. (b) (each general election to include congressional candidates), 6901 (Secretary of State to place presidential and vice-presidential candidates on general election ballot).

[18] Gov. Code, § 82000.  This echoes the general rule that "if the Legislature, or the electorate in the case of an initiative measure, has provided an express definition of a term, that definition ordinarily is binding on the courts."  (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 650, quoting *People v. Canty* (2004) 32 Cal.4th 1266, 1277, internal quotation marks omitted.)

[19] Compare Gov. Code, § 83117.5 (prohibiting gift of $10 or more per month to Commissioners, and defining "gift" for these purposes only) with Gov. Code, § 82028 (defining "gift" for rest of Act).

[20] Gov. Code, § 82052.5.

[21] See, e.g., Gov. Code, §§ 82007, subd. (c) ("candidate" excludes federal), 82023 ("elective office" excludes federal), 82024 ("elective state office" excludes federal), 82050 ("state candidate" excludes federal), 82053 ("statewide elective office" excludes federal).

5

The definition provided in the Act is clear. We will not "interpret away clear language in favor of an ambiguity that does not exist."[22] We therefore interpret the statute using the defined term for "election" in the Act, and conclude that section 83105 bars Commissioners from contributing to federal elections held within the State.

As noted above, the Commission's manual agrees with this conclusion. It provides that the statutory ban applies to "any primary, general, special or recall election held in this state," which echoes the Act's governing definition of election.[23] It continues: "The Commission interprets this to include contributions to the campaign of any candidate for President and contributions to the campaign of any other candidate for federal office when the election is held in California."[24]

Our interpretation of the text is also consistent with the history of amendments to the Act. The Act has been amended over 200 times.[25] None of these amendments altered the language of the ban on contributions in Government Code section 83105.[26] But the larger context of one amendment is arguably relevant to our analysis. When first adopted, the Act required certain campaign disclosures by federal candidates.[27] Specifically, section 84208 stated that every person required by a provision of federal law (section 309(a) of Federal Election Campaign Act of 1971) to file any statement or report with the California Secretary of State, must file two copies and must also file two copies

---

[22] *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268, quoting *Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 326.

[23] Manual, *supra*, at p. 3; Gov. Code, §§ 82000, 82022 ("'Election' means any primary, general, special or recall election held in this state").

[24] Manual, *supra*, at p. 3.

[25] *Howard Jarvis Taxpayers Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 163, citing *People v. Kelly* (2010) 47 Cal.4th 1008, 1042, fn. 59.

[26] The statute containing the ban, section 83105, has been amended twice, but neither amendment had any effect on the scope of the ban. (Stats. 2021, ch. 50, § 152 [modernizing gender-neutral language]; Stats., 1986, ch. 620, § 1 [decapitalizing "Commission" and extending prohibition on seeking election to other public office to appointment term].)

[27] See former Gov. Code, § 84208 (added by Initiative Measure approved by the electors June 4, 1974); see also Pub. L. No. 92-225, (Feb. 7, 1972) 86 Stat. 3, § 403(a) (providing nothing in the federal law "shall be deemed to invalidate or make inapplicable" state law, unless complying with it would result in federal law violation).

6

with certain county clerks.[28] Candidates for President, Vice President, and United States Senate had to file their additional copies with the county clerks of Los Angeles and San Francisco; candidates for the United States House of Representatives had to file theirs with the clerk for each county in their congressional district.[29]

As we have noted, the voters created the Commission to impartially administer and implement the Act, including the provision just described. The inclusion of federal candidates in that provision suggests that the voters intended Commissioners to remain impartial with respect to federal candidates—including by not contributing to the campaigns of federal candidates.

Federal law preempted the disclosure requirements for federal candidates shortly after voters adopted the Act.[30] Now, the Act directs that, when federal law requires federal candidates to furnish disclosures to California's Secretary of State, the onus is on the Secretary of State (rather than the candidates) to furnish copies to the county clerks.[31]

We have considered a possible argument that this change impliedly amended section 83105, such that its contributions ban would no longer apply to campaigns for federal elections held in this State. Under this view, when the Legislature amended the Act to remove the requirement that federal candidates submit campaign disclosures to state officials, it also impliedly removed federal elections from the ban on Commissioner contributions. This implied amendment supposedly occurred because one obvious reason for the ban—to maintain Commissioner impartiality in its oversight of federal candidate disclosures—no longer existed. We reject this notion for two reasons.

---

[28] Former Gov. Code, § 84208 (as added by Initiative Measure approved by the electors June 4, 1974).

[29] *Ibid*.

[30] 52 U.S.C. § 30143 (current preemption provision); Pub. L. No. 93–443 (Oct. 15, 1974) 88 Stat 1263, § 301 (original preemption provision); 2 FPPC Op. 61, *In the Matter of: Opinion requested by Jeffrey A. Dennis-Strathmeyer* (1976) (concluding that federal law preempts section 84208, so Congressman and campaign committee treasurer "are required to file copies of campaign statements only with those persons specified by federal law").

[31] Gov. Code, § 84217; see also Stats. 1977, ch. 1095, p. 3509, § 3 (similarly providing as much in amendments to former section 84208).

7

First, implied amendments are generally disfavored.[32]  Second, the Act contains strict limits on amending it, which apply to implied amendments.[33]  The limits here would mean that the implied amendment to the statutory ban would have to further the Act's purposes.[34]  But amending the statute on Commissioner contributions, so that the ban no longer applies to federal elections held in this State, would not further the Act's purposes.  Instead, as explained below, the ban on those contributions still furthers the purposes of the Act.

**The Statutory Purpose**

The Act directs that it "should be liberally construed to accomplish its purposes."[35]  A central purpose of the Act was to create a commission that would vigorously enforce its provisions.[36]  In addition to what the Act itself expresses about its goals, the ballot arguments in favor of the measure further reveal the Act's purposes.[37]  The ballot arguments state that a "yes" vote will "[e]nforce the law by establishing a tough, nonpolitical commission."[38]  They further state:  "Rather than leading to unfounded charges or selective enforcement, [the Act] will at last bring full, fair and independent enforcement of the law."[39]

The goal of a "tough, nonpolitical" Commission is furthered by construing section 83105 to ban Commissioners from contributing to campaigns for federal elections held in

---

[32] *Environmental Protection Information Center v. California Dept. of Forestry and Fire Protection* (2008) 44 Cal.4th 459, 514; *Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540–541.

[33] Gov. Code, § 81012 (providing that amendments to Act may be made by voters or by a 2/3 vote in the Legislature; if the latter, the amendment must further the Act's purposes); *Huening v. Eu* (1991) 231 Cal.App.3d 766, 777, 779 (Act's limit on amendments in section 81012 applies to implied amendments).

[34] See Gov. Code, § 81012; Stats. 1977, ch. 1095, p. 3509, § 3 (legislative removal of preempted material from former section 84208).

[35] Gov. Code, § 81003.

[36] Gov. Code, §§ 81001, subd. (h), 81002, subd. (f), 83111.

[37] See *People v. Snyder*, *supra*, 22 Cal.4th at p. 309, fn. 5 (referring to Act's ballot arguments as interpretative aid).

[38] Ballot Pamp., Primary Elec. (June 4, 1974), argument in favor of Prop. 9, p. 36, bold omitted.

[39] Ballot Pamp., Primary Elec. (June 4, 1974), rebuttal to argument against Prop. 9, p. 37.

this State.  Because the way the Commission interprets, applies, and enforces the Act may affect those candidates, a ban on Commissioner contributions to them promotes the impartial administration and implementation of the Act.  Several concrete examples illustrate this.

To begin with, individuals who remain under the Commission's purview by virtue of a current or past office or candidacy may become federal candidates.  In general, the Commission has at least four years to enforce compliance with the Act.[40]  Applying the contributions ban to federal elections preserves this statutory safeguard of impartiality toward covered officials and candidates, who may then become federal candidates in California.  Otherwise, Commissioners could be enforcing the Act against those candidates while also contributing to their campaigns.

Additionally, at least two provisions of the Act independently illustrate the ongoing relevance of the ban to federal elections held in this State.  Government Code section 89519 allows state and local candidates to use their "surplus campaign funds" to support or oppose a federal candidate.[41]  The Commission might well be called on to consider whether funds were actually "surplus campaign funds," properly used for that purpose, or properly disclosed.[42]  In that scenario, preserving Commissioner impartiality—by prohibiting Commissioners from contributing to federal candidates— would help promote full, fair, and independent enforcement of section 89519.

Similarly, Government Code section 84308 prohibits an officer of certain state and local agencies from directing contributions exceeding $250 to federal candidates from anyone who is a party to a proceeding pending at the agency involving a license, permit, or other entitlement.[43]  In overseeing this prohibition, the Commission may find itself

---

[40] See Gov. Code, §§ 91000.5 (five-year statute of limitations, unless tolled, on administrative action), 91011 (generally setting forth four-year statute of limitations on civil action, but limitations period for violations of filing reports and statements is either four years after audit could begin or one year after Franchise Tax Board sends Commission report of audit of alleged violator, whichever is less); see also Gov. Code, § 91013.7 (Commission has four years to seek court judgment to collect unpaid civil monetary penalty).

[41] Gov. Code, § 89519, subds. (a) & (b)(5); see Gov. Code, § 82023.

[42] See Gov. Code, § 89519, subd. (a) (requiring disclosure of surplus campaign funds pursuant to Chapter 4 (commencing with section 84100)).

[43] Gov. Code, § 84308, subds. (a)–(b).  The same prohibition exists for agents and "participants"—someone who is not a party to, but who has a financial interest in and actively supports or opposes a particular decision in the proceeding.  (*Ibid.*)

directly involved in a matter implicating federal candidates. The goal of impartiality is served by a Commission whose members have not contributed to such candidates.

Another example pertains to the state ballot pamphlet, which the Act intends to be useful to voters.[44] The Act authorizes a candidate for United States Senate to buy pamphlet space for a 250-word statement, but prohibits mentioning opponents.[45] If a question arose relating to this aspect of the pamphlet, the Commission could again find itself involved in a matter involving federal candidates.

As these examples illustrate, applying the ban on Commissioner contributions to federal candidates promotes impartiality and the full, fair, and independent enforcement of the Act by the Commission. The objects sought to be achieved by the Act, like its history, reinforce that the words of the Act mean what they say: the statutory ban on Commissioner contributions applies to candidates in federal elections held in this State.

---

[44] Gov. Code, § 81002, subd. (d).

[45] Gov. Code, § 88001, subd. (i); see also Elec. Code, § 9084, subd. (i) (containing same language).

19-1001