

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-10-1997

# US Sound & Ser Inc v. Brick

Precedential or Non-Precedential:

Docket
97-5089

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation
"US Sound & Ser Inc v. Brick" (1997). *1997 Decisions.* Paper 240.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/240

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 10, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5089

U.S. SOUND & SERVICE, INC.,
a corporation of the State of New Jersey

v.

TOWNSHIP OF BRICK; PLANNING BOARD OF BRICK
TOWNSHIP; GREGORY VOCATURO; PAMELA VOCATURO;
RON LEVENDUSKY

          U.S. Sound & Service, Inc.,
          and James Restaino,
          Appellants

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 96-cv-02353)

Argued: August 14, 1997

BEFORE: STAPLETON, GREENBERG and COWEN,
Circuit Judges

(Opinion Filed October 10, 1997)

          Lewis H. Robertson (Argued)
          Evans, Osborne, Kreizman & Bonney
          P.O. Box BB
          Red Bank, NJ 07701
          Attorney for Appellant


          Shawn P. McCarthy (Argued)
          Cucci & McCarthy
          1500 Route 88 West
          P.O. Box 1609
          Brick, NJ 08723
          Attorney for Appellee
          Township of Brick

          Robert D. Ford (Argued)
          Russo, Secare, Ford, Delanoy &
           Martino
          616 Washington Street
          Toms River, NJ 08753

Attorney for Appellee
Planning Board of Brick Township

OPINION OF THE COURT

STAPLETON, Circuit Judge:

U.S. Sound & Service, Inc. ("U.S. Sound") asserts that the Township of Brick, New Jersey ("the Township"), and its Planning Board ("the Board") violated U.S. Sound's First Amendment right to free expression by imposing unjustified conditions on its right to operate a video store in the Township. The district court denied U.S. Sound's motion for a partial summary judgment as to liability, denied its alternative application for a preliminary injunction, and granted summary judgment for the Township and the Board. We will reverse and remand for further proceedings.

I. Background

In November 1995, U.S. Sound contracted to purchase property in Brick, New Jersey, which it planned to use as a video store offering "sales and rentals with video preview booths, books, magazines and sundries." App. at 273. The property is located within 600 feet of a structure that, since September 1996, has been used to house all of the kindergarten and most of the first grade classes in Brick, and it is also within 1500 feet of the Brick High School. An Ocean Ice Palace, which is frequented by young customers,

2

stands across the street, and not far away is the only branch of the Ocean County Public Library in Brick.

U.S. Sound intended to convert the property from its then current use as a hair salon; therefore, it had to apply to the Planning Board for a "change of use." Its application included a simple floor plan showing a 1000-square-foot single room with display racks and several booths for previewing movies available for rent. It described its projected video collection as including "rated and unrated titles in a broad range of categories such as drama, comedy, action, classical, documentary, musical, sports, nature and adult-theme videos in order to attract as broad a patronage as possible." App. at 88.

The Board approved the change of use subject to the following conditions, among others that are not challenged before us:

There shall be no private viewing of movies within an

enclosed area anywhere upon the premises or within the structure. Movies may, however, be previewed without barriers, obstructions or privacy provided the movies are not rated R, X, and NC and/or NC 17 or any other rating other than G or PG.

. . .

In the event that the applicant chooses to sell books, magazines, periodicals or other printed material or photographs, films, motion pictures, video cassettes, slides or other visual representations [described in New Jersey's "Sexually Oriented Business Law" 1] then the

_____

1. The law encompasses printed and recorded media that "depict or describe a `specified sexual activity' or `specified anatomical area.' " Specified sexual activity includes "(1) The fondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breasts; or (2) Any actual or simulated act of human masturbation, sexual intercourse or deviate sexual intercourse." Specified anatomical areas include "(1) Less than complete and opaquely covered human genitals, pubic region, buttock or female breasts below a point immediately above the top of the areola; or (2) Human male genitals in a discernibly turgid state even if covered." Chapter 230, Laws of 1995 (codified at N.J. Stat. Ann. 2C:34-6 (West Supp. 1997)).

3

sale of such materials can only take place in an area of the premises that is separated, separately walled through which admission can only be gained by a separate door which shall have a sign affixed to it stating that admission is only to those persons over eighteen years of age. Such area shall not consume more than ten percent of the square floor area of the structure.

App. at 228-29.

Dissatisfied with these conditions, U.S. Sound filed suit in the district court against the Board and the Township under 42 U.S.C. S 1983 alleging that the Board's blanket prohibition of preview booths and its content-based restriction of adult-theme materials to 100 square feet inhibited U.S. Sound's free expression in violation of the First Amendment.

After the Township and the Board answered, U.S. Sound moved for partial summary judgment and, in the alternative, for a preliminary injunction. In response, the Township and the Board moved for a summary judgment in

their favor. In support of their own motion and in opposition to those of U.S. Sound, the Township and the Board advanced only one justification for the challenged conditions: the protection of minors from exposure to adult entertainment materials. U.S. Sound acknowledged that this was a "compelling state interest" for purposes of the strict scrutiny test and a "substantial state interest" for purposes of the intermediate scrutiny test. It insisted, however, that this legitimate interest of the Township and the Board did not justify the conditions imposed under either test.

Relying on City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), the district court subjected the Township's regulation of U.S. Sound's proposed activities to intermediate scrutiny and held that it survived that scrutiny. Accordingly, it denied U.S. Sound's motions for partial summary judgment and a preliminary injunction and granted the motion of the Township and the Board. With no federal claims left pending before it, the court declined to exercise supplemental jurisdiction over several

4

state claims asserted by U.S. Sound and dismissed those claims without prejudice.

The district court properly exercised jurisdiction under 28 U.S.C. S 1331, and this court has appellate jurisdiction to review the district court's final order under 28 U.S.C. S 1291.

II. Discussion

"Speech, be it in the form of film, live presentations, or printed matter, that is sexually explicit in content but not `obscene' is protected under the First Amendment." Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir. 1997). If the government regulates non-obscene expression based on its sexually explicit content, the restrictions imposed pass constitutional muster only if they survive "strict scrutiny"-- that is, only if they serve a compelling state interest in a manner which imposes the least possible burden on expression. Sable Communications, Inc. v. FCC, 492 U.S. 115, 126 (1989). On the other hand, if the government acts to ameliorate the undesirable "secondary effects" of sexually explicit expression, its regulation is regarded as "content-neutral" and enjoys a more deferential standard of "intermediate," rather than "strict," scrutiny. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986)(applying intermediate scrutiny to a zoning ordinance designed "to prevent crime, protect the city's retail trade, [and] maintain

property values"); see also Ben Rich Trading, Inc. v. City of
Vineland, 1997 WL 567320, at *5 (3d Cir. 1997); Phillips,
107 F.3d at 172. Content-neutral governmental regulation
survives this "intermediate scrutiny" if it is narrowly
tailored to serve a substantial governmental interest and
leaves open ample alternative channels for communication
of the restricted expression. As we noted in Phillips,

> [w]hile the requirement of narrow tailoring does not
> mean that the ordinance must be the least restrictive
> means of serving the Borough's substantial interests,
> "[g]overnment may not regulate expression in such a
> manner that a substantial portion of the burden on
> speech does not serve to advance its goals." Ward v.
> Rock Against Racism, 491 U.S. 781, 799; 109 S. Ct.
> 2746, 2758, 105 L.Ed.2d 661 (1989).

5

Id. at 174.

The Township and the Board persuaded the district court
that although the regulation imposed by the Board's
resolution singles out adult entertainment for special
treatment, it is content-neutral because it is aimed not at
the sexually explicit content but rather at the "secondary
effects" of that entertainment on children. Accordingly, the
court applied the intermediate scrutiny test of Renton.
Intermediate scrutiny was not appropriate, however,
because "[l]isteners' reactions to speech are not the type of
`secondary effects' . . . referred to in Renton." Boos v. Barry,
485 U.S. 312, 321 (1988). As the Supreme Court explained
in Boos:

> To take an example factually close to Renton, if the
> ordinance there was justified by the city's desire to
> prevent the psychological damage it felt was associated
> with viewing adult movies, then analysis of the
> measure as a content-based statute would have been
> appropriate. The hypothetical regulation targets the
> direct impact of a particular category of speech, not a
> secondary feature that happens to be associated with
> that type of speech.

Id. at 321.

The impact of protected speech on minors is a direct,
rather than a secondary, effect, and a regulation that
singles out non-obscene sexually explicit material because
of its impact on minors is not content-neutral. This is clear
from the Supreme Court's recent decision in Reno v.
American Civil Liberties Union, 117 S. Ct. 2329 (1997),

where the Court struck down two provisions of the Communications Decency Act of 1996 (CDA). The Attorney General urged that the challenged provisions should be subjected to intermediate scrutiny under Renton because the Act was designed to protect minors from exposure to "indecent" and "patently offensive" speech on the Internet. The Court rejected this position:

> In Renton, we upheld a zoning ordinance that kept adult movie theatres out of residential neighborhoods. The ordinance was aimed, not at the content of the films shown in the theaters, but rather at the

6

> "secondary effects"--such as crime and deteriorating property values--that these theaters fostered:" `It is th[e] secondary effect which these zoning ordinances attempt to avoid, not the dissemination of "offensive" speech.' " . . . [T]he purpose of the CDA is to protect children from the primary effects of "indecent" and "patently offensive" speech, rather than any "secondary" effect of such speech. Thus, the CDA is a content-based blanket restriction on speech, and, as such, cannot be "properly analyzed as a form of time, place, and manner regulation." 475 U.S., at 46, 106 S. Ct. at 928. See also Boos v. Barry, 485 U.S. 312, 321, 108 S. Ct. 1157, 1163, 99 L.Ed.2d 333 (1988) ("Regulations that focus on the direct impact of speech on its audience" are not properly analyzed under Renton); Forsyth County v. Nationalist Movement, 505 U.S. 123, 134 (112 S. Ct. 2395, 2403, 120 L.Ed.2d 101 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation").

Id. at 2342-43 (citation omitted).

Because the Township and the Board seek to justify the Board's resolution on the sole basis of a desire to protect minors from exposure to adult entertainment, Reno requires that we subject that resolution to strict scrutiny. Our conclusion would not be different, however, if we were persuaded that Renton supplies the appropriate test. While protecting minors from exposure to adult entertainment can accurately be characterized as a compelling and a substantial governmental interest, the regulation imposed by the Board's resolution is neither the least restrictive means of furthering that interest nor narrowly tailored to serve that interest. Accordingly, we conclude that the Board's resolution restricted protected speech in violation of U.S. Sound's right to free expression under the First Amendment.

When the Township and Board's regulation of protected speech was challenged, they bore the burden under both the strict and intermediate scrutiny tests of identifying the governmental interest or interests that motivated the Board's resolution and of coming forward with facts which would support a conclusion that the resolution was

sufficiently narrowly drawn to serve that interest or those interests. Phillips, 107 F.3d at 172-73.2 They have failed to do so.

There is no question that the Constitution allows the Township to foreclose display and distribution of adult materials to minors. Indeed, U.S. Sound acknowledges that the Township can promote its compelling state interest in protecting minors from exposure to adult entertainment by requiring U.S. Sound to market adult materials only in segregated space to which minors are denied access. But U.S. Sound objects to the additional burdens on its expressive activities. As U.S. Sound stresses, even under Renton, the Township may not regulate its expressive activities in such a way that "a substantial portion of the burden . . . does not serve to advance" the professed goal of preventing exposure of minors to adult entertainment. Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989).

While the Township and the Board have identified the governmental interest they purport to be serving, they cannot explain why, having denied minors access to the only area in which adult entertainment can be marketed, the risk of minors' exposure to adult material will be reduced by limiting that area to ten percent of the floor space of the facility. Nor can they explain why, having denied minors access to the only area in which adult entertainment can be marketed, the risk of minors' exposure to adult material will be reduced by eliminating private previewing booths from the segregated area, or, for that matter, from the space to which access is not restricted. It necessarily follows that the motion of the Township and the Board for summary judgment should have been denied and that U.S. Sound's motion for partial summary judgment should have been granted.

_____

2. The Township and the Board complain that U.S. Sound, prior to filing suit, never volunteered to segregate its adult materials. U.S. Sound disputes this, and the record does not resolve this controversy. Nonetheless, regardless of what U.S. Sound did or did not propose, the Board had an affirmative duty when undertaking to restrict protected

speech to confine its restrictions within constitutional limits.

8

Because the Township and the Board have sought to justify the entire burden of their regulations of protected speech on the sole basis that minors should not be exposed to adult entertainment, our holding is a very narrow one. We do not hold that a municipality may not regulate private viewing booths for adult entertainment where it perceives serious secondary effects from their use that can be ameliorated only by such regulation. See, e.g., Ben Rich Trading, Inc. v. City of Vineland, 1997 WL 567320, at *10-*11 (3d Cir. 1997); Mitchell v. Commission on Adult Entertainment Est., 10 F.3d 123, 133 (3d Cir. 1993). Nor do we hold that a municipality is powerless to limit the amount of adult entertainment marketed by a video store where it can prove that a store with a higher percentage of adult material will have serious secondary effects on the residential neighborhood that surrounds the store. Nor do we suggest that where a video store that will be patronized by minors elects to screen previews on a public screen, a municipality cannot prohibit public exhibition of previews of adult entertainment.

III.

The premises on which U.S. Sound wishes to conduct its video business are currently occupied by another proprietor, and the owner of those premises disputes that U.S. Sound has a right to possession. Indeed, the owner disputes whether U.S. Sound has had a right to possession at any point after the Board's resolution of March 13, 1996. Whether or not U.S. Sound has a right to present possession is, of course, highly relevant to whether there is a current need for injunctive relief. Moreover, the period during which it has had a right to such possession may be relevant in determining what, if any, damages are recoverable by U.S. Sound. It is clear, based on the summary judgment record, however, that U.S. Sound is at least entitled to a declaratory judgment that the Board's resolution of March 13, 1996 violated its rights under the First Amendment. Accordingly, we will reverse the judgment of the district court with instructions that it enter such a declaratory judgment and that it conduct such further

9

proceedings consistent with this opinion as may be necessary.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

10