102 Cal.Rptr.2d 20 (2000)
85 Cal.App.4th 86
PACIFIC GAS AND ELECTRIC COMPANY, Petitioner,
v.
PUBLIC UTILITIES COMMISSION, Respondent;
Independent Energy Producers Association et al., Real Parties in Interest.
No. A089556.
Court of Appeal, First District, Division Three.
November 30, 2000.
*22 Roger J. Peters, Christopher J. Warner, Andrew L. Niven, Ann H. Kim, San Francisco, Horvitz & Levy, Ellis J. Horvitz, Calabasas, Counsel for petitioner PG & E.
Peter Arth, Mary F. McKenzie, Helen W. Yee, San Francisco, Counsel for respondent PUC.
Ellison & Schneider, Douglas K. Kerner, Sacramento, Counsel for real parties in interest Independent Energy Producers Association, California Manufacturers Association, The Utility Reform Network.
*21 WALKER, J.
Public Utilities Code section 453, subdivision (d), provides: "No public utility shall include with any bill for services or commodities furnished any customer or subscriber any advertising or literature designed or intended (1) to promote the passage or defeat of a measure appearing on the ballot at any election whether local, statewide, or national, (2) to promote or defeat any candidate for nomination or election to any public office, (3) to promote or defeat the appointment of any person to any administrative or executive position in federal, state or local government, or (4) to promote or defeat any change in federal, state, or local legislation or regulations."[1] The issue we address in this opinion is whether section 453, subdivision (d), unconstitutionally infringes upon public utilities' First Amendment right to freedom of speech. We conclude that the statute's blanket prohibition against public utilities' protected speech is facially unconstitutional. Thus, the Public Utilities Commission's May 13, 1999 order enforcing the statute is set aside.

Factual And Procedural Background
Pacific Gas and Electric Company (PG & E) includes in its monthly billings a newsletter, the contents of which "range from energy-saving tips to stories about wildlife conservation, and from billing information to recipes." (Pacific Gas & Elec. Co. v. Public Util. Comm'n. (1986) 475 U.S. 1, 8, 106 S.Ct. 903, 89 L.Ed.2d 1.) The newsletters sent in June, July and August of 1987, then entitled PG & E Progress, included information regarding federal regulations that PG & E was seeking to have changed. PG & E does not dispute that some of the subject matter discussed in the newsletters in June, July, *23 and August of 1987 fell within the purview of section 453, subdivision (d).
On December 15, 1987, real parties in interest, Independent Energy Producers Association, California Manufacturers Association, and Toward Utility Rate Normalization (collectively, complainants), filed a complaint with the Public Utilities Commission (PUC) against PG & E alleging that the utility violated section 453, subdivision (d), by using the June, July, and August 1987 billing envelopes for its political advocacy.[2] The complaint sought enforcement of the statute against the utility, arguing that, because the cost of postage for mailing monthly bills is an expense allocated to ratepayers, the insertion of political literature into the unused space in the billing envelopes forced the ratepayers to subsidize PG & E's political advocacy in violation of their First Amendment rights. On January 19, 1988, PG & E filed an answer and a motion to dismiss the complaint contending, among other things, that enforcement of section 453, subdivision (d), would violate its constitutional right to freedom of speech.
At proceedings held before PUC on September 17, 1990, the parties agreed that an evidentiary hearing was unnecessary and stipulated to the following facts: "1. The Parties agree that there is no incremental postage cost associated with inserting PG & E Progress in billing envelopes. Postage costs for mailing PG & E customers bills, which are borne by ratepayers, would be the same, whether or not Progress is included in the billing envelope. [¶] 2. The Parties agree that ratepayers are not charged any of the labor or overhead cost associated with the insertion of Progress into PG & E's billing envelopes, pursuant to CPUC Decision (D.) XX-XX-XXX. [¶] 3. The Parties agree, for purposes of this litigation only, that ratepayers receive direct financial benefits from articles appearing in Progress, including the three editions of Progress at issue in this proceeding. Ratepayers are able to save money by taking advantage of the rate, energy conservation, and safety information provided in Progress. [¶] 4. The Parties agree that D.XX-XX-XXX, pertaining to PG & E's 1987 General Rate Case (GRC), found that articles in Progress provide the same type of information which must otherwise be provided by PG & E's customer service representatives when they respond to customers inquiries by phone or in person. As a result, Progress contributes to reduced customer accounts expense which, in turn, results in lower rates, all else held constant. The Parties further agree that the above-mentioned conclusions reached in D.XX-XX-XXX shall be controlling for purposes of this proceeding."[3] After the filing of briefs, PUC took no further action in the case until October 21, 1998, at which time it requested the filing of new briefs and informed the parties that it would issue a decision based on the record developed in 1990.
On May 13, 1999, PUC issued decision No. 99-05-032, ordering PG & E to refund to its customers $920,000, representing 40 percent of the cost of postage for the billings in June, July, and August 1987, based upon its finding that PG & E violated section 453, subdivision (d), by including "with bills for services to its customers literature designed or intended to promote or defeat any change in federal legislation or regulations."
On December 2, 1999, PUC issued decision No. 99-12-022 [1999 WL 1990195], denying PG & E's application for rehearing of decision No. 99-05-032. PG & E filed a timely petition for writ of review of both decisions.[4] We granted review of the petition on August 7, 2000.

*24 DISCUSSION
In its May 13, 1999 decision, PUC made the following findings of fact: (1) The stipulation of facts was adopted; (2) The June, July, and August 1987 issues of the PG & E Progress contained articles seeking to promote a change in current federal regulations in regard to purchasing power from private power producers; (3) The cost of mailing the three issues was approximately $2.3 million; and (4) PG & E, a public utility, violated section 453, subdivision (d)(4), in that PG & E did include with bills for services to its customers literature designed or intended to promote or defeat any change in federal legislation or regulations. PUC also made the following conclusions of law: (1) PG & E violated section 453, subdivision (d)(4); and (2) PG & E should be required to refund to its customers 40 percent of the cost of postage ($920,000) for the three issuesJune, July, and August 1987, plus interest commencing April 1, 1998, in the manner set forth in the Order. Based upon the foregoing findings of fact and conclusions of law, PUC ordered PG & E to refund $920,000 to its customers.[5]
Relying upon Consolidated Edison Co. v. Public Serv. Comm'n (1980) 447 U.S. 530, 532, 544, 100 S.Ct. 2326, 65 L.Ed.2d 319 {Con Ed ), PG & E contends that PUC's May 13, 1999 order must be reversed because section 453, subdivision (d), directly infringes upon its freedom of speech as protected by the First and Fourteenth Amendments and cannot be upheld as a reasonable time, place or manner restriction, a permissible subject matter regulation, or a narrowly tailored means of serving a compelling state interest. (Id. at pp. 532, 544, 100 S.Ct. 2326.) Relying upon Abood v. Detroit Board of Education (1977) 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (Abood), respondents argue that PUC construed the statute constitutionally in this case in accordance with the Legislature's intention to prevent the infringement of ratepayers' freedom of speech resulting from forced subsidization of public utilities' political speech. We hold that section 453, subdivision (d), is reasonably susceptible of only one interpretation, that the statute is unconstitutional on its face, and that PUC's order enforcing the unconstitutional statute must, therefore, be set aside.

I. Section 453, Subdivision (d), Can Only Be Interpreted as Prohibiting the Inclusion of Political Advocacy in Billing Envelopes.

The goal in interpreting a statute is to determine and effectuate legislative intent. (Woods v. Young (1991) 53 Cal.3d 315, 323, 279 Cal.Rptr. 613, 807 P.2d 455.) To determine that intent, however, we must look first to the words of the statute, giving them their usual and ordinary meaning. (Ibid.; DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601, 7 Cal. Rptr.2d 238, 828 P.2d 140.) Courts may look to legislative history to construe a statute only when the statutory language is susceptible of more than one reasonable interpretation. (Souza v. Lauppe (1997) 59 Cal.App.4th 865, 872, 69 Cal.Rptr.2d 494.) "If there is no ambiguity in the language of the statute, `then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.]" (Lennane v. Franchise Tax Bd. (1994) 9 Cal.4th 263, *25 268, 36 Cal.Rptr.2d 563, 885 P.2d 976.) Succinctly stated, "[w]here the statute is clear, courts will not `interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" (Hartford Fire Ins. Co. v. Macri (1992) 4 Cal.4th 318, 326, 14 Cal.Rptr.2d 813, 842 P.2d 112.) Although "[a] statute should be construed whenever possible so as to preserve its constitutionality" (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323), when statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it." (Solberg v. Superior Court (1977) 19 Cal.3d 182, 198, 137 Cal.Rptr. 460, 561 P.2d 1148.)
On its face, section 453, subdivision (d), unambiguously prohibits the inclusion of specified political literature "with any bill for services or commodities furnished any customer or subscriber. . . ." (Italics added.) Because the language of the statute is clear and unambiguous, it would be improper for us to refer to extrinsic evidence, such as legislative history, in an attempt to create an ambiguity from which to construe the statute as prohibiting ratepayer subsidization of the utilities' political advocacy. (See Hartford Fire Ins. Co. v. Macri, supra, 4 Cal.4th at p. 326, 14 Cal.Rptr.2d 813, 842 P.2d 112; Solberg v. Superior Court, supra, 19 Cal.3d at p. 198, 137 Cal.Rptr. 460, 561 P.2d 1148; Farnow v. Superior Court (1990) 226 Cal. App.3d 481, 486, 276 Cal.Rptr. 275 ["a court may not rewrite a law, supply an omission or give words an effect different from the plain and direct import of the terms used"].) The only reasonable interpretation of which the statutory language in section 453, subdivision (d), is susceptible is that it prohibits all political bill inserts, not just political bill inserts subsidized by ratepayers. (See Souza v. Lauppe, supra, 59 Cal.App.4th at p. 872, 69 Cal.Rptr.2d 494.)

II. The Statute's Prohibition Against Inserting Political Literature in Billing Envelopes Is Facially Unconstitutional.

The First Amendment, made applicable to the states through the Fourteenth Amendment, "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." (Roth v. United States (1957) 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498.) It is well established that corporations such as PG & E have the right to freedom of speech, since "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual." (First National Bank of Boston v. Bellotti (1978) 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707.) Moreover, the newsletter inserted by PG & E in its customers' bills "includes the kind of discussion of `matters of public concern' that the First Amendment both fully protects and implicitly encourages." (Pacific Gas & Elec. Co. v. Public Util. Comm'n., supra, 475 U.S. at p. 9, 106 S.Ct. 903.) Thus, "[t]here is no doubt that . . . [PG & E ] Progress receives the full protection of the First Amendment." (Id. at p. 8, 106 S.Ct. 903.) Because section 453, subdivision (d), purports to prohibit constitutionally protected speech, we must determine whether the regulation can be upheld as: "(i) a reasonable time, place, or manner restriction; (ii) a permissible subject-matter regulation; or (iii) a narrowly tailored means of serving a compelling state interest." (Con Ed, supra, 447 U.S. at p. 535, 100 S.Ct. 2326.) For the reasons discussed below, the statute's blanket prohibition against political bill inserts cannot withstand the constitutional scrutiny required by the First Amendment.
A regulation that restricts only the time, place, or manner of speech is constitutional as long as the restriction is reasonable. (Con Ed, supra, 447 U.S. at pp. 535-536, 100 S.Ct. 2326; Linmark Associates, *26 Inc. v. Willingboro (1977) 431 U.S. 85, 93, 97 S.Ct. 1614, 52 L.Ed.2d 155.) However, a statute that regulates speech on the basis of its subject matter "`. . . slip[s] from the neutrality of time, place, and circumstance into a concern about content.'" (Police Department of Chicago v. Mosley (1972) 408 U.S. 92, 99, 92 S.Ct. 2286, 33 L.Ed.2d 212, fn. omitted.) "Therefore, a constitutionally permissible time, place, or manner restriction may not be based upon either the content or subject matter of speech." (Con Ed, supra, 447 U.S. at p. 536, 100 S.Ct. 2326, fn. omitted.) Section 453, subdivision (d), is clearly content-related. PG & E is free to include its newsletter in the billing envelopes as long as the newsletter does not contain discussion of the restricted political issues. Indeed, the statute seeks "to suppress certain bill inserts precisely because they address [political] issues." (Id. at p. 537, 100 S.Ct. 2326.) Thus, the statute cannot be upheld as a content-neutral time, place, or manner regulation. (Ibid.)
Nor is the statute justified as a permissible subject-matter regulation. (See Con Ed, supra, 447 U.S. at pp. 537-540, 100 S.Ct. 2326.) In Con Ed, the United States Supreme Court considered the constitutionality of an order issued by the New York Public Service Commission prohibiting utilities from including in monthly bill envelopes inserts discussing controversial issues of public policy. (Id. at p. 532, 100 S.Ct. 2326.) The New York Public Service Commission argued that the subject-matter regulation in that case was permissible because it was viewpoint-neutral and was justified by the special interests of a government in overseeing the use of its property. (Id. at pp. 537-540, 100 S.Ct. 2326.) In rejecting these arguments, the high court held that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." (Id. at p. 537, 100 S.Ct. 2326.) It further held that the utilities' billing envelopes did not constitute government property, the protection of which could justify a refusal to allow partisan political advocacy. (Id. at p. 540, 100 S.Ct. 2326.) As with the remarkably similar regulation at issue in Con Ed, section 453, subdivision (d), attempts to restrict public utilities' discussion of entire topics and cannot be justified as a permissible subject-matter regulation. (See Con Ed, supra, at pp. 537-540, 100 S.Ct. 2326.)
Finally, section 453, subdivision (d), cannot be justified as a narrowly tailored means of serving a compelling state interest. (See Con Ed, supra, 447 U.S. at pp. 540-544, 100 S.Ct. 2326.) Respondents argue that section 453, subdivision (d)'s ban on the insertion of political literature in billing envelopes serves the state's compelling interest in preventing ratepayers from being forced to subsidize PG & E's political speech in violation of Abood, supra, 431 U.S. at page 210, 97 S.Ct. 1782. In bood, the United States Supreme Court considered the constitutionality of an agency shop clause under which the Detroit Board of Education required its employees to pay dues to the board's representative union, which utilized the dues, in part, to further its political purposes. (Id. at p. 209, 97 S.Ct. 1782.) The high court held that requiring employees to contribute to the support of ideological causes they may oppose unconstitutionally infringed upon their freedom of association protected by the First and Fourteenth Amendments. (Id. at p. 210, 97 S.Ct. 1782.) Although we may conclude from Abood that the state has a compelling interest in preventing a governmental entity, or in this case an entity regulated by the government, from unconstitutionally infringing upon individuals' First Amendment rights, the question remains whether section 453, subdivision (d), is a narrowly tailored means of accomplishing that end.[6]
*27 Regulations related to the subject matter of speech are subject to strict scrutiny and will pass constitutional muster only if they "serve a compelling state interest in a manner which imposes the least possible burden on expression." (U.S. Sound & Service, Inc. v. Township of Brick (3d Cir.1997) 126 F.3d 555, 558.) Because, as discussed above, section 453, subdivision (d), is related to the content of the prohibited speech, in order for the statute to survive constitutional scrutiny, it must represent the least restrictive means of serving the state's interest. (126 F.3d at p. 558; Reno v. American Civil Liberties Union (1997) 521 U.S. 844, 874, 117 S.Ct. 2329, 138 L.Ed.2d 874.) It does not. If the Legislature's intention in enacting section 453, subdivision (d), was to follow Abood, supra, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261, by preventing forced contribution to the support of public utilities' political advocacy in violation of the ratepayers' First Amendment rights, then the Legislature could easily have utilized more precise language to achieve that goal without completely banning the inclusion of political literature in billing envelopes. Instead, the sweeping language implemented by the Legislature unconstitutionally fails "to avoid unnecessary abridgement" of public utilities' protected speech. (Buckley v. Valeo (1976) 424 U.S. 1, 25, 96 S.Ct. 612, 46 L.Ed.2d 659.) Thus, the regulation cannot be justified as a narrowly tailored means of serving a compelling state interest.
Because section 453, subdivision (d), can only be interpreted as prohibiting the inclusion of protected speech in billing envelopes, and the prohibition cannot be justified as a reasonable time, place or manner restriction, a permissible subject-matter regulation, or a narrowly tailored means of serving a compelling state interest, the statute "pose[s] a present, total and fatal conflict" with the First Amendment and is, therefore, unconstitutional on its face and cannot be applied under any circumstances. (Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 180-181, 172 Cal.Rptr. 487, 624 P.2d 1215; Kunz v. New York (1951) 340 U.S. 290, 304, 71 S.Ct. 312, 95 L.Ed. 280 [a statute which discloses "by its very language that it is impossible of construction in a manner consistent with First Amendment rights" is facially unconstitutional]; Women's Medical Professional Corp. v. Voinovich (6th Cir.1997) 130 F.3d 187, 193["[i]f a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances"].)

III. PUC's Order Enforcing the Facially Unconstitutional Statute Must Be Set Aside.

Respondents' argument that PUC's May 13, 1999 order was necessary to prevent forced ratepayer subsidization of PG & E's political speech in violation of Abood, supra, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261, is misleading and meritless. "[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." (Securities Comm'n v. Chenery Corp. (1943) 318 U.S. 80, 95, 63 S.Ct. 454, 87 L.Ed. 626.) The complaint in this case alleged that PG & E violated section 453, subdivision (d). Complainants argued for PUC's jurisdiction based upon violation of the statute and sought to have PUC enforce the statute against PG & E. In its decision, PUC did not find that the inclusion of the subject literature in the customers' bills resulted in ratepayers' contribution to the support of PG & E's political advocacy in violation of Abood. On the contrary, in response to PG & E's argument that none of the costs associated with the printing and insertion of the literature into the billing envelopes were recovered from ratepayers, in violation of title 16 of the United States Code section 2623(b)(5), *28 the commission stated in its decision: "Because of the view we take of the violation of Pub.Util.Code § 453(d), we do not reach this issue." Instead, PUC's May 13, 1999 order was based directly upon its finding that PG & E violated section 453, subdivision (d), "in that PG & E did include with bills for services to its customers literature designed or intended to promote or defeat any change in federal legislation or regulations." Since "an agency's order must be upheld, if at all, `on the same basis articulated in the order by the agency itself" (FPC v. Texaco Inc. (1974) 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141, quoting Burlington Truck Lines v. United States (1962) 371 U.S. 156, 168-169, 83 S.Ct. 239, 9 L.Ed.2d 207 & SEC v. Chenery Corp. (1947) 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995), "We cannot `accept appellate counsel's post hoc rationalizations for agency action,'" (ibid). Thus, we conclude that PUC's May 13, 1999 order improperly enforced the facially unconstitutional statute and must, therefore, be set aside.

Disposition
Decision Nos. 99-12-022 and 99-05-032 are set aside.
McGUINESS, P.J., and PARRILLI, J., concur.
NOTES
[1] All further statutory references are to the Public Utilities Code.
[2] When addressing their arguments on appeal, we will refer to complainants and PUC collectively as respondents.
[3] The fifth, sixth and seventh stipulated facts are not relevant to the issue on appeal.
[4] In addition to claiming that section 453, subdivision (d), is unconstitutional, PG & E also claims in its petition that: (1) the finding of a violation of the statute is not supported by substantial evidence; (2) the ordered refund constituted impermissible retroactive ratemaking; (3) PUC's decision is barred by prior decisions under the doctrines of res judicata and collateral estoppel; and (4) the ordered refund exceeded the scope of PUC's authority to penalize public utilities. Because our decision on the constitutional issue is dispositive, we do not address the other issues raised on appeal.
[5] PUC is proscribed from declaring a statute unconstitutional and, thus, did not make any findings or reach any conclusions in this regard. (Cal. Const, art. III, § 3.5.)
[6] Under the posture of this case, we do not have occasion to address whether PG & E's insertion of the newsletters in the unused portion of the billing envelopes actually required ratepayers to contribute to the support of ideological causes in violation of their First Amendment rights.